NEWTON, ATTORNEY GENERAL OF THE STATE OF NEW YORK, ET AL. *v.* CONSOLIDATED GAS COMPANY OF NEW YORK.

CONSOLIDATED GAS COMPANY OF NEW YORK *v.* NEWTON, ATTORNEY GENERAL OF THE STATE OF NEW YORK, ET AL.

CONSOLIDATED GAS COMPANY OF NEW YORK *v.* NEWTON, ATTORNEY GENERAL OF THE STATE OF NEW YORK, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 257, 258 and 288. Argued November 17, 18, 1921.—Decided March 6, 1922.

1. The copying into the record, contrary to Equity Rules 75 and 76, of voluminous stenographic reports of proceedings before a master, useless exhibits and other matter irrelevant to the appeal, is an

indefensible practice which the court hereafter will feel at liberty to punish to the limit of its discretion—possibly by dismissing the appeal. P. 173.

2. Evidence *held* sufficient to support conclusions of the master and trial court that the eighty-cent gas rate fixed by New York Laws 1906, c. 125, and upheld in *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, had become confiscatory when this suit was begun and decided due to increased costs of labor and materials, and would so continue. P. 174.

3. There is a presumption that profits realized by a gas company while subject to supervision by a commission empowered to prohibit unreasonable rates were lawfully acquired. P. 175.

4. The public interest in the property of a public service corporation dedicated to a public use, and the past success of its enterprise, will not support a demand that it operate indefinitely at a loss. P. 175.

5. The fact that a gas company may not have supplied gas of the candle power required by statute, will not debar it (as coming with unclean hands) from equitable relief from a confiscatory rate, when its conduct has been subject to official control and it has endeavored to meet its customers' requirements. P. 175.

6. Books of a gas company, kept in ordinary course, under supervision of a public commission, and free from suspicion, *held* admissible as *prima facie* evidence of the confiscatory effect of a statutory gas rate. P. 176.

7. As a condition to an injunction against a gas rate found confiscatory, the court has discretionary power, which, however, should be exercised very cautiously, to prescribe a maximum future rate for a specified period as a limitation in favor of consumers. P. 177.

8. But a requirement that future collections made by the gas company above the confiscatory rate shall be impounded for ultimate distribution in accordance with a rate to be fixed by state authority in the indefinite future is erroneous. P. 177.

9. The District Court has discretion to make orders pending appeal to preserve the *status quo* until decision by the appellate court. P. 177.

267 Fed. 231; 274 Fed. 986, modified and affirmed.

APPEALS and cross appeals from decrees of the District Court in a suit to enjoin the enforcement of a statutory gas rate.

*Mr. John A. Garver* and *Mr. William L. Ransom,* with whom *Mr. Charles A. Vilas* and *Mr. Jacob H. Goetz* were on the briefs, for Consolidated Gas Company.

*Mr. Wilber W. Chambers,* with whom *Mr. Charles D. Newton,* Attorney General of the State of New York, *Mr. Clarence R. Cummings* and *Mr. John Holley Clark, Jr.,* were on the briefs, for Newton, Attorney General.

Appellants have not had their day in court as is guaranteed them by the Constitution; and for this reason the case should be reversed and remanded for a new trial.

Respondent enjoyed an adequate return upon the fair value of its property from its inception to the end of the year 1917. The evidence showed that not only did it enjoy such a fair return but it made enormous profits throughout this entire period.

In the years of 1918 and 1919, on which the finding of confiscation was based by the court below, the respondent earned more than a fair return.

The period selected by respondent in its bill of complaint, viz, from the time the statute took effect in 1906 to 1918, inclusive, should be adopted in this case, and the statute should not be considered confiscatory merely upon the financial result obtained in one abnormal year (1918) and part of another (10 months of 1919).

The respondent has accumulated a fund amounting to $11,801,659.48 for " contingencies ". The statute should not be declared confiscatory until this fund is exhausted. Temporary losses due to abnormal conditions should be debited against it.

The statute in question should not be declared unconstitutional unless the court finds that the average rate of return has been less than 6% for a considerable period of time.

The sum of $7,781,000 allowed by the master and the court below for franchises should be excluded from the

property upon which the respondent is entitled to a return.

The master and the court below have included in the property upon which respondent is entitled to a return, various properties which are not used and useful in respondent's gas business, and should be excluded.

The Fifty-seventh street office building was not an adequate improvement upon the land upon which it was erected and should not be included in the rate base. Moreover, had respondent rented equivalent office space nearby, there would have been an annual saving of at least $36,000 which should be credited in this case to operating expenses.

Power to regulate gas rates is a sovereign power; one legislature may not bind a succeeding legislature, and any act of a corporation under a general or special law does not of itself establish a property or a contract right which limits the legislature's power to regulate rates.

The master and the court below erred in failing to follow the rule laid down by this court that, in determining the fair value of respondent's property, depreciation should be deducted.

Respondent has an unliquidated claim against the United States because the Government extracted light oils from its gas during a part of 1918. Until this has been decided there can be no safe basis for disposing of this case.

The master erred in refusing to admit any testimony showing the tests made by the City of New York concerning the quality of gas furnished by respondent to its consumers prior to 1916. Furthermore, there were many other errors committed by the master in the admission and exclusion of evidence relating to a compliance with the statute in regard to the quality of gas. The evidence allowed was sufficient to establish that respondent repeat-

edly violated the statute in regard to candle power; and for this reason alone the bill of complaint should have been dismissed.

Reversible error was committed in the admission of respondent's books.

The master erred repeatedly in admission and exclusion of evidence, which errors were not corrected in the court below.

*Mr. John P. O'Brien,* with whom *Mr. James A. Donnelly, Mr. Harry Hertzoff* and *Mr. Alex I. Hahn* were on the briefs, for Swann, District Attorney.

The defendants have not had a fair trial.

The period found is altogether too brief.

The burden was upon the plaintiff of proving the statute unconstitutional.

The plaintiff's books of accounts were not *prima facie* proof of their contents.

Distinguishing, *Rowland* v. *St. Louis & San Francisco R. R. Co.,* 244 U. S. 106, 108; *Boyle* v. *St. Louis & San Francisco R. R. Co.,* 222 Fed. 546, 547; *Northern Pacific Ry. Co.* v. *Keyes,* 91 Fed. 47, 58; *Kings County Lighting Co.* v. *Nixon,* 268 Fed. 143; *Chesapeake & Ohio Ry. Co.* v. *Stojanowski,* 191 Fed. 720; *Parker* v. *United States,* 203 Fed. 950; *Wilson* v. *United States,* 190 Fed. 430; *American Surety Co.* v. *Pauly,* 72 Fed. 470; *Grace* v. *Brown,* 86 Fed. 155; *Bacon* v. *Conroy,* 172 Fed. 532; *Barber Co.* v. *Forty-second Street Ry. Co.,* 180 Fed. 648. Relying on: 17 Cyc. 394, 395; *Collins* v. *Collins,* 102 App. Div. 204; *Consolidated Safety Pin Co.* v. *Humbert,* 128 N. Y. S. 710, 711; *Mayor* v. *Second Avenue R. R. Co.,* 102 N. Y. 572; *Blum* v. *Davis,* 95 Misc. 140; *Pneumatic Signal Co.* v. *Texas & Pacific R. R. Co.,* 216 N. Y. 374; *The Norma,* 68 Fed. 509; Wigmore on Evidence, § 1530; *Wells Whip Co.* v. *Tanners Mutual Fire Ins. Co.,* 209 Pa. St.

488; *Pelican Lumber Co.* v. *Johnson,* 44 Tex. Civ. App. 206, 207; *Reyburn* v. *Queen City Savings Bank Co.,* 171 Fed. 609, 615, 616; *State* v. *Stephenson,* 69 Kans. 405; *San Pedro Lumber Co.* v. *Reynolds,* 121 Cal. 74; *Meyer* v. *Brown,* 130 Mich. 449; *Stolz* v. *Scott,* 28 Idaho, 417; *Stuart* v. *Camp Carson Mining Co.,* 84 Ore. 702.

The plaintiff's proof of the cost of manufacturing its gas is defective.

There was no competent proof of plaintiff's distribution expenses; nor proof that the amounts alleged to be paid for oil were reasonable, and they should not be allowed.

Franchises should not be included in the rate base. *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 43; *Cumberland Tel. Co.* v. *Louisville,* 187 Fed. 637, 647; *Lincoln Gas Co.* v. *Lincoln,* 182 Fed. 928; *Public Service Gas Co.* v. *Utility Commissioners,* 84 N. J. L. 463; *Duluth Street Ry. Co.* v. *Railroad Commission,* 161 Wisc. 245; *Spring Valley Waterworks* v. *San Francisco,* 192 Fed. 137; *Home Telephone Co.* v. *Carthage,* 235 Mo. 644; *Bronx Gas Co.* v. *Public Service Commission,* 190 App. Div. 13, 25.

The court erred in fixing the value of the plaintiff's property.

The statute is not unconstitutional unless the plaintiff is unable to earn a return which is security for its investment. *San Diego Land Co.* v. *National City,* 174 U. S. 739, 754; *San Diego Land Co.* v. *Jasper,* 189 U. S. 439; *Southern Pacific Co.* v. *Bartine,* 170 Fed. 725; *Lincoln Gas Co.* v. *Lincoln,* 250 U. S. 256.

The production cost found was based on an erroneous conception of the evidence.

The plaintiff should have adopted the coke-oven system.

Even on the District Judge's findings, the statute should not be held confiscatory.

Mr. Justice McReynolds delivered the opinion of the court.

The Consolidated Gas Company was organized in 1884 by consolidation of six corporations then manufacturing, distributing and selling gas in New York City and has continued to carry on the business, making additions and extensions as required by the increasing demand. Chapter 125 Laws of New York 1906 required it to sell gas with illuminating power of twenty-two candles, at no more than eighty cents per thousand cubic feet. A suit brought soon after this act became effective to enjoin its enforcement, because confiscatory, was finally dismissed without prejudice, *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, and for many years thereafter the Company supplied gas at the prescribed rate. January 16, 1919, it instituted the present proceeding against the Attorney General and other public officers. The bill alleges that the statutory rate is confiscatory—prevents and will continue to prevent a fair return on the property used—and prays for an injunction.

A Master, appointed in May, 1919, heard testimony from day to day for eight months—about twenty thousand printed pages—and presented this to the court with his report and opinion, May 5, 1920. Having considered the results of actual operations during all of 1918 and the first eight months of 1919, and well known subsequent conditions, he concluded:

"On the basis of the prices, rates of pay, and costs prevailing during the eight months beginning January 1, 1919, the cost of making and distributing gas has been such as to allow a very small, if any return, on even the actual investment; and since September 1, 1919, the cost of making and distributing gas has been increased in a number of respects so that the fair inference is that the complainant company now finds itself without any return upon the in-

vestment. The conditions found by me have existed for more than a year last past, and to a lesser degree for at least a year before that time, and will continue for at least a considerable period of time, the end of which cannot now be forecast. Upon such a situation and such a prospect, I think that the complainant company has shown itself, clearly and beyond all reasonable doubt, entitled to relief from the statutory limitation on its rates, but that its rate of return should be calculated, not upon the present high reproduction cost of its property, with or without the deduction of observed or actual depreciation, in whatever manner computed, but upon the actual, reasonable investment in the property devoted to the service of the complainant's consumers. "

In a carefully prepared opinion, while disagreeing with the Master concerning some valuations and resolving all doubts against the Company, the court held the prescribed rate had been confiscatory since January 1, 1918, and would continue so to be. 267 Fed. 231; 274 Fed. 986.

An amended decree—entered August 11, 1920—enjoined enforcement of the act upon condition " that until March 1, 1921, or until the earlier promulgation of a gas-rate applicable to the plaintiff by some competent authority of the State of New York, the plaintiff shall neither charge nor collect for the sale of gas in the City of New York more than the sum of one dollar and twenty cents per thousand cubic feet." And also upon the further condition that it should impound, or adequately secure, collections above eighty cents per thousand cubic feet, for ultimate distribution in accordance with any rate so established.

A broad appeal was allowed in No. 257, September 9, 1920. In No. 258 an appeal, allowed November 10, 1920, brings up those parts of the August decree which imposed conditions upon continuation of the injunction.

February 28, 1921, the trial court undertook to modify the August decree by directing that the excess derived from sales above eighty cents per thousand feet should be impounded until three months after determination of the appeal here or until a rate should be fixed by competent state authority; and further, that such sums should be subject to ultimate distribution " as nearly as may equitably be done " in accordance with that rate and the approved principles and findings relative thereto. The appeal from this order is No. 288.

Equity Rules 75 and 76[1] direct that records on appeal shall not set forth the evidence fully but in simple condensed form and require omission of non-essentials and mere formal parts of documents. Without apparent attempt to comply with these rules and with assent of appellee's counsel, appellants in No. 257 have filed a record

---

[1] Equity Rule 75. . . . (b)  The evidence to be included in the record shall not be set forth in full, but shall be stated in simple and condensed form, all parts not essential to the decision of the questions presented by the appeal being omitted and the testimony of witnesses being stated only in narrative form, save that if either party desires it, and the court or judge so directs, any part of the testimony shall be reproduced in the exact words of the witness. The duty of so condensing and stating the evidence shall rest primarily on the appellant, who shall prepare his statement thereof and lodge the same in the clerk's office for the examination of the other parties at or before the time of filing his *præcipe* under paragraph *a* of this rule. . . .

Equity Rule 76. In preparing the transcript on an appeal, especial care shall be taken to avoid the inclusion of more than one copy of the same paper and to exclude the formal and immaterial parts of all exhibits, documents and other papers included therein; and for any infraction of this or any kindred rule the appellate court may withhold or impose costs as the circumstances of the case and the discouragement of like infractions in the future may require. Costs for such an infraction may be imposed upon offending solicitors as well as parties. . . .

of 21 volumes—twenty thousand printed pages—made up largely of stenographic reports of proceedings before the Master with hundreds of useless exhibits and many thousand pages of matter without present value. This is indefensible practice which we shall hereafter feel at liberty to punish to the limit of our discretion—possibly by dismissal of the appeal. These rules were intended to protect the courts against useless, burdensome records and litigants from unnecessary costs and delay. Counsel ought to comply with them, and trial courts should enforce performance of this plain duty.

The fundamental question presented for determination was whether the eighty-cent rate had been confiscatory under conditions existing during 1918 and 1919 and probably would continue so to be. Considering the rulings here in *Willcox* v. *Consolidated Gas Co.* and other cases, the answer required little more than an appreciation of facts not very difficult to ascertain. The Master's report and opinion disclosed careful and intelligent consideration of the whole matter. "Resolving all doubts against the plaintiff" and using valuations "pared down unsparingly," the trial court agreed with the Master's ultimate findings and ruled that to enforce the statute would result in confiscation. Since March 30, 1921, the Public Service Commission has had power to prescribe rates for appellee unrestricted by the maximum specified in the Act of 1906; but no such action has been taken. It did, however, authorize a rate of one dollar and forty cents, instead of eighty cents, for another company operating in New York City, effective after August 1, 1920, and has thus indicated its informed judgment. See *Morrell* v. *Brooklyn Borough Gas Co.*, 231 N. Y. 398. We are, of course, aware of the enormous increase in cost of labor and materials since this court declared that appellee might possibly earn six per centum under the eighty-cent rate. In view of all these things, only very cogent reasons would

justify complete reversal of the challenged decree.   The points relied upon by appellants in No. 257 and their supporting arguments have been considered, and we think no such reasons are shown.   To discuss all of these would subserve no sufficient purpose—only a few present questions of general interest.

Appellants earnestly insist that they were denied fair and impartial trial both by the Master and the court.   So far as it relates to the court, we dismiss the suggestion as frivolous.   Undoubtedly during the many months devoted to hearings the Master talked too much and often unwisely; but, manifestly, appellants' counsel made the situation unnecessarily difficult and failed to support the Master's earnest efforts promptly to ascertain the essential facts.   Looking at all the circumstances we are unable to conclude that any substantial right was denied.  The size of the record, eight months of almost daily hearings and the Master's reiterated offers to hear properly prepared and helpful evidence show that abundant opportunity was given for presentation of appellants' cause.  The Master wisely sought to exclude ill-advised cross examinations and other unimportant matter.

Since 1907 the Gas Company has been subject to supervision by a Commission empowered to prohibit unreasonable rates and the presumption is that any profits from its business were lawfully acquired. *Municipal Gas Co.* v. *Public Service Commission,* 225 N. Y. 89, 99.   Mere past success could not support a demand that it continue to operate indefinitely at a loss.  The public has no such right in respect of private property although dedicated to public use.   When it became clear that the prescribed rate had yielded no fair return for more than a year and that this condition would almost certainly continue for many months the Company was clearly entitled to relief.

The claim that appellee had failed to supply gas of the prescribed candle power and therefore came into court

with unclean hands and should not be heard, is without merit. The Company was subject to official control; the facts as to candle power of the gas actually furnished are in dispute; the calorific quality had become more important to most consumers than the illuminating one; the Master reached the conclusion that the statutory standard had been substantially complied with; it had earnestly tried under very difficult circumstances to meet its customers' requirements. It sought relief from an unlawful burden—the fundamental wrong arose from the statute—and we find nothing which could justify refusal to consider its demand.

Complaint is also made because the Master admitted appellee's books in evidence. These books were kept in the ordinary course under general supervision of the Commission, appeared free from suspicion of dishonesty, were submitted to appellants' experts and were the only readily available sources of detailed information concerning the Company's affairs. In the circumstances we think no harm resulted from admitting them as *prima facie* evidence. *Rowland* v. *St. Louis & San Francisco R. R. Co.,* 244 U. S. 106, 108.

The general doctrine applicable when rates are alleged to be confiscatory has been so often stated that present discussion of it is unnecessary. *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19; *Des Moines Gas Co.* v. *Des Moines,* 238 U. S. 153; *Rowland* v. *St. Louis & San Francisco R. R. Co.,* 244 U. S. 106; *Denver* v. *Denver Union Water Co.,* 246 U. S. 178; *Lincoln Gas & Electric Light Co.* v. *Lincoln,* 250 U. S. 256.

In No. 258 the Gas Company complains of the limit of one dollar and twenty cents per thousand cubic feet up to March 1, 1921, as a condition to continuation of the injunction, and also because sums above eighty cents per thousand were impounded for ultimate distribution in

accordance with any rate which might be fixed thereafter by competent state authority.

It was within the court's discretion to grant the injunction upon terms and we cannot now say that the limitation upon charges amounted to abuse.  But grave injustice may result from action of this kind and the power should be very cautiously exercised.  See *Morrell v. Brooklyn Borough Gas Co.*, 231 N. Y. 398.   It was error to direct ultimate distribution of the impounded funds in accordance with any subsequently approved rate.  Rate making is no function of the courts and should not be attempted either directly or indirectly.  After declaring the eighty-cent rate confiscatory, the court should not have attempted, in effect, to subject the Company for an indefinite period to some unknown rate to be proclaimed in the future upon consideration of conditions then prevailing.

The amendatory decree of February was obtained long after appeals from the August decree had been granted and when the court had very limited power over the litigation.   " One general rule in all cases (subject, however, to some qualifications) is that an appeal suspends the power of the court below to proceed further in the cause." Undoubtedly, after appeal the trial court may, if the purposes of justice require, preserve the *status quo* until decision by the appellate court.  *Hovey* v. *McDonald*, 1^9 U. S. 150, 157.  But it may not finally adjudicate substantial rights directly involved in the appeal.  *Merrimack River Savings Bank* v. *Clay Center*, 219 U. S. 527, 534.   See *First National Bank* v. *State National Bank*, 131 Fed. 430.  The precise result of the February decree is somewhat doubtful, but we may treat it as an attempt to preserve the *status quo* in order that this court might finally and completely dispose of the whole matter.  Thus interpreted the decree (No. 288) was within the court's

discretion and as there was no abuse of this discretion it must be affirmed.

All impounded funds should be promptly released to the Gas Company subject only to deductions for such costs as are clearly assessable to the prevailing party. Costs of appeal No. 257 will be taxed to appellants; in No. 258 to the appellees. Modified as here indicated the decree below is affirmed. The cause will be remanded for further proceedings in conformity with this opinion.

It seems proper to add that we do not intend by any-thing said herein to intimate what would have been a reasonable rate for the sale of gas under the circumstances disclosed. The eighty-cent rate was confiscatory; the one dollar and twenty-cent maximum imposed by the court during a specified period as a condition to the injunction was a limitation in favor of the consumers.

*Modified and Affirmed.*

Mr. Justice Clarke concurs in the result.