COLUMBUS GAS LIGHT COMPANY v. PUBLIC SERVICE COMMISSION OF INDIANA.

[No. 24,167.   Filed June 28, 1923.]

1. PUBLIC SERVICE COMMISSION.—*Value of Utilities for Rate-Fixing.—Reproduction Value.—Present Time.*—In determining the value of a public utility for rate-fixing purposes, the Public Service Commission should estimate the reproduction cost at the present time and not the original cost, less depreciation. p. 401.

2. PUBLIC SERVICE COMMISSION.—*Value of Utilities for Rate-Fixing.—Going Value Should be Considered.*—The "going value," that is, the value in an assembled and established plant;

400     SUPREME COURT OF INDIANA,

Columbus Gas, etc., Co. v. Public Service Comm.—193 Ind. 399.

doing business and earning money, is to be considered by the Public Service Commission in fixing a valuation for a rate basis. p. 403.

3. PUBLIC SERVICE COMMISSION.—*Rate-Fixing.*—*Deficit under Former Rate.*—*Should be Considered.*—The Public Service Commission, in fixing rates for a public utility, should consider, and arrange for the extinguishment of, a deficit of the utility under the rates for the years immediately preceding, fixed by the commission. p. 403.

4. PUBLIC SERVICE COMMISSION.—*Rate-Fixing.*—*Operating Expenses.*—In fixing rates for a public utility, the Public Service Commission cannot ignore items charged by the utility as operating expenses, unless there is an abuse of discretion in that regard by the utility's managing officers. p. 404.

5. PUBLIC SERVICE COMMISSION.—*Rate of Return on Valuation.* —*Rule Stated.*—The rule for determining the rate of return on the valuation of the property of a public utility stated. p. 404.

From Bartholomew Circuit Court; *John W. Donaker,* Judge.

Action by the Columbus Gas Light Company against the Public Service Commission of Indiana. From an adverse judgment, the plaintiff appeals. *Reversed.*

*Baker & Richman* and *Beaumont, Smith & Harris,* for appellant.

*U. S. Lesh,* Attorney-General, and *Edward M. White,* Assistant Attorney-General, for appellee.

TOWNSEND, J.—Appellee found, for rate making purposes, that appellant's property at Columbus, Indiana, was of the value of $200,000 and fixed rates accordingly. Appellant brought this action (§78 ch. 76, Acts 1913 p. 167) in the circuit court to vacate and set aside the order of appellee. The cause was submitted on the same evidence adduced before the commission. The trial court found as the commission did, and concluded that the rate was not confiscatory.

Appellant's evidence tends to show that the cost of reproduction new, less depreciation, of the gas plant as

of the date (August, 1921) of making the rate is somewhere from $283,104 to $325,000. Both figures are exclusive of going value of $25,000. But the commission's engineer found the cost of reproduction of the various units, as of the time they were installed, to be $213,044 and then depreciated this to $186,115. It thus becomes obvious that both the commission and the court followed this engineer on this false basis, and arrived at a value by historical reproduction new, depreciated. True, the commission in its finding says: "The Commission's engineers applied to the inventory a unit cost which resulted in a 'cost of reproduction' of $213,044, which is higher than the original cost of the property. In this particular case, therefore, the Commission finds that in determining the fair value of petitioner's property the depreciated value, $186,115 should not be controlling, but that $200,000 would be a fair value to place upon the property."

The language of the finding " 'cost of reproduction' of $213,044, which is higher than the original cost of the property", is not warranted at all from the testimony of the commission's engineer, who testified expressly and categorically on this point as follows: "Q. But in every event you did not proceed to find the cost of constructing the Columbus Gas Light Company as of today? A. We do not make valuations as cost of reproduction new as of today. Q. Then you say you finally applied in this report a figure which you considered ample to reproduce each piece of equipment under the approximate circumstances and conditions during the time those pieces of equipment were purchased and installed? A. That explains it right there. Q. In a word, aren't your costs of reproduction really your best estimate of what was the actual cost of putting into that property the various units at the time they were put in?

A. Substantially an investment cost as of the valuation. * * * Q. That, as you say, is not intended to represent what it would cost to reproduce the property as of today? A. It is not."

In *Wilcox* v. *Consolidated Gas Co.* (1908), 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034, 48 L. R. A. (N. S.) 1134, it was said: "There must be a fair return upon the reasonable value of the property at the time it is being used for the public. * * * And we concur with the court below in holding that the value of the property is to be determined as of the time when the inquiry is made regarding the rates. If the property which legally enters into the consideration of the question of rates has increased in value since it was acquired, the company is entitled to the benefit of such increase."

In the *Minnesota Rate Cases* (1912), 230 U. S. 352, 454, 33 Sup. Ct. 729, 762 (57 L. Ed. 1511, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A 18), it was said: "The making of a just return for the use of the property involves the recognition of its fair value if it be more than its cost. The property is held in private ownership and it is that property, and not the original cost of it, of which the owner may not be deprived without due process of law."

The above cases follow the rule laid down in *Smyth* v. *Ames* (1897), 169 U. S. 466, 547, 18 Sup. Ct. 418, 434 (42 L. Ed. 819), where it was said: "What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience."

The rule in the above cases has been recently reaffirmed in *Missouri ex rel. Southwestern Bell Telephone Company* v. *Public Service Commission of Missouri*, —— U. S. ——, 43 Sup. Ct. 544, 67 L. Ed. ——, at the October, 1922, Term (May 21, 1923), and *Bluefield*

MAY TERM, 1923.            403

Columbus Gas, etc., Co. v. Public Service Comm.—193 Ind. 399.

*Waterworks & Improvement Co.* v. *Public Service Commission of West Virginia,* —— U. S. ——, 43 Sup. Ct. 675, 67 L. Ed. ——, at the October, 1922, Term (June 11, 1923).

It should also be said in this connection that appellant is entitled to have the going value, whatever it is, considered in fixing a rate base. In *Des Moines Gas Co.* v. *Des Moines* (1915), 238 U. S. 153, 165, 35 Sup. Ct. 811, 815 (59 L. Ed. 1244), it was said: "That there is an element of value in an assembled and established plant, doing business and earning money, over one not thus advanced, is self-evident. This element of value is a property right, and should be considered in determining the value of the property, upon which the owner has a right to make a fair return when the same is privately owned, although dedicated to public use."

Appellant shows that for the years 1918, 1919, 1920, up to May 1, 1921, it had a total deficit of $16,498.63. This loss occurred on rate fixed by the commission, taking the commission's value of appellant's property fixed in 1918, 1919 and 1920. Our attention has not been called to any audit which disputes this. This, if true, should certainly be considered and amortized. In *Newton* v. *Consolidated Gas Co.* (1922), 258 U. S. 165, 42 Sup. Ct. 264, 66 L. Ed. 538, it was said: "Since 1907 the gas company has been subject to supervision by a commission empowered to prohibit unreasonable rates, and the presumption is that any profits from its business were lawfully acquired. *Municipal Gas Co.* v. *Public Service Commission,* 225 N. Y. 89, 99, P. U. R. 1919C 364, 121 N. E. 772. Mere past success could not support a demand that it continue to operate indefinitely at a loss. The public has no such right in respect of private property, although dedicated to public use. When it became clear

that the prescribed rate had yielded no fair return for more than a year, and that this condition would almost certainly continue for many months, the company was clearly entitled to relief."

So far as operating expenses are concerned, there is no tangible suggestion in the record of an abuse of discretion on the part of appellant's officers. It has been well said that: "The commission is not the financial manager of the corporation, and it is not empowered to substitute its judgment for that of the directors of the corporation; nor can it ignore items charged by the utility as operating expenses, unless there is an abuse of discretion in that regard by the corporate officers." *Utilities Co.* v. *Springfield Gas Co.* (1919), 291 Ill. 209, 234, 125 N. E. 891, 901.

Appellant also complains of the rate of return which the commission and the court fixed. That is to say, if the value found be admitted, yet the rate (6.58%), arising from the projected income found, is too low. As at present advised by the evidence in the record, we are unable to determine this question; but the Supreme Court of the United States has very recently fixed a standard by which to determine this question when the relevant facts are adduced.

In *Bluefield Waterworks and Improvement Co.* v. *Public Service Commission of West Virginia, supra,* it was said: "The company contends that the rate of return is too low and confiscatory. What annual rate will constitute just compensation depends upon many circumstances and must be determined by the exercise of a fair and enlightened judgment, having regard to all relevant facts. A public utility is entitled to such rates as will permit it to earn a return on the value of the property which it employs for the convenience of the public equal to that generally being made at the same time and in the same general part of the country

Pittsburgh, etc., R. Co. v. Ft. Wayne, etc., Trac. Co.—193 Ind. 405.

on investments in other business undertakings which are attended by corresponding risks and uncertainties; but it has no constitutional right to profits such as are realized or anticipated in highly profitable enterprises or speculative ventures. The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties. A rate of return may be reasonable at one time and become too high or too low by changes affecting opportunities for investment, the money market and business conditions generally."

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.